IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 7, 2016 Session

## TIMOTHY JERMAINE COX v. STATE OF TENNESSEE

Appeal from the Circuit Court for Gibson County
No. H9409      Clayburn L. Peeples, Judge

No. W2015-02329-CCA-R3-PC  -  Filed July 19, 2016

In 2013 the Petitioner, Timothy Jermaine Cox, entered a best interest plea to aggravated sexual battery and violation of the sex offender registry. By agreement, the trial court sentenced the Petitioner to ten years, to be served at 100%, with a concurrent sentence of two years for violating the sex offender registry, to be served at 35%. The Petitioner filed a petition for post-conviction relief, which the post-conviction court denied after a hearing. On appeal, the Petitioner asserts that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel on appeal. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

J. Noble Grant, III, Jackson, Tennessee, for the appellant, Timothy Jermaine Cox.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Garry G. Brown, District Attorney General; and Jennifer D. McEwen, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

### A. Trial

This case originates from the Petitioner's raping a minor victim while she was a

guest in his home. Based on this incident, a Gibson County grand jury indicted the Petitioner for aggravated sexual battery and violation of the sex offender registry. The Petitioner entered an *Alford* plea[1] to both charges, and the State presented the following summary of the underlying facts of the case:

> [T]he proof at trial would be that the [Petitioner] resided in Humboldt [Tennessee] . . . . On or about . . . the night of December 15th, 2012 and the morning of December 16th, 2012, . . . the alleged victim, . . . who was 11 years old at the time, went to the [Petitioner's] home to spend the night with her friend who was the [Petitioner's] daughter, . . . . The State would offer the testimony of both girls. They would testify that that night . . . the two girls watched a movie . . . in a bed . . . . That the [Petitioner] got in the bed with the girls at about the time they would have went to sleep. That he watched part of the movie with them. That they all went to sleep in the same bed. . . . That in the middle of the night the victim woke up and the [Petitioner] was touching her vaginal area on the outside of her clothes. That she got up and went to the bathroom. . . . That the next morning [the victim's] father . . . picked her up. She told him immediately. They went to the authorities and the case was filed after that.

The trial court accepted the Petitioner's plea and informed the Petitioner that his plea would subject him to lifetime community supervision consistent with the requirements of the Sex Offender Registry. The Petitioner indicated that he had not been informed by his trial counsel of this requirement, and trial counsel and the Petitioner were given time to confer, following which the Petitioner indicated that he still wished to enter into the plea agreement. The trial court accepted the Petitioner's plea and sentenced the Petitioner to ten years for the aggravated sexual battery conviction, to be served at 100%, with a concurrent sentence of two years for violating the sex offender registry, to be served at 35%.

## B. Post-Conviction Hearing

On May 1, 2014, the Petitioner filed, *pro se*, a petition for post-conviction relief on the grounds that he had received the ineffective assistance of counsel. On July 11, 2014, with the assistance of an attorney, the Petitioner filed an amended petition, alleging that he had received the ineffective assistance of counsel because trial counsel ("Counsel") had not adequately informed and explained to him the terms and conditions of his plea agreement, specifically that his sentence required lifetime community supervision. He further contended that Counsel failed to interview and subpoena appropriate witnesses

---

1    In entering an *Alford* plea, a defendant "faced with strong evidence of guilt and no substantial evidentiary support for [his] claim of innocence" may refrain from admitting his culpability and accept a sentence. *North Carolina v. Alford*, 400 U.S. 25, 91 (1970).

prior to trial.

On September 11, 2015, the post-conviction court held a hearing during which the parties presented the following evidence: the Petitioner testified that he was convicted for "touching a minor" at his home. Counsel was appointed to represent him and visited him two or three times at the jail. The Petitioner's trial was set for July 2013, but the Petitioner stated that he did not feel Counsel was prepared for trial, and the Petitioner, ultimately, entered an *Alford* plea to the charges instead. The Petitioner asked Counsel about potential witnesses, including his fiancée, Ashley Pickard, and Counsel responded that she was not an appropriate witness and "refused" to call her as a witness if they went to trial. The Petitioner stated that, because she was present in the home when the crime allegedly occurred, she was a vital witness to his defense. He believed that he did not have a "chance" at trial if he did not have Ms. Pickard as his "key witness;" thus, the Petitioner felt he had to accept the State's plea offer. The Petitioner contended that Counsel's refusal to call Ms. Pickard as a witness played a "substantial role" in his decision to accept the State's plea offer. The Petitioner confirmed that Ms. Pickard was willing to testify on his behalf at the time of the trial.

The Petitioner testified that he "wasn't aware" of the "community supervision for life" requirement that was part of his sentence. He stated that Counsel never discussed lifetime supervision with him prior to the entry of his plea and that he did not know what it meant until he read about it in prison. The Petitioner testified that had he been aware of this requirement prior to entering his plea, he would not have accepted the plea offer. The Petitioner identified the judgment of conviction for this case and testified that the box corresponding with the lifetime community supervision requirement was not "checked" on the judgment form. He, however, agreed that he was informed of this condition at the guilty plea submission hearing.

On cross-examination, the Petitioner testified that he was unaware that the judgment form had been amended to reflect the lifetime community supervision requirement. The Petitioner recalled a meeting with Counsel in June 2013 at the county jail. During that meeting, Counsel presented the Petitioner with the State's plea offer and the Petitioner declined it but signed the document with a counter-offer, at the advice of Counsel. This signed document, dated June 13, 20013, also contained language indicating the Petitioner was "satisfied" that Counsel had fully investigated the case and explained both the case and the Petitioner's options to him. The Petitioner agreed that he signed the document indicating his satisfaction with Counsel's services, but maintained that he was not satisfied. He explained that he only signed the document because he "had no other choice." The Petitioner testified that he was not satisfied because Counsel did not "elaborate" on the Petitioner's case other than to present him with the State's offer. The Petitioner agreed that he had other pending charges against him and that he was

facing a possible thirty-seven year sentence if he went to trial in this case.

The Petitioner agreed that he was on the Sex Offender Registry at the time of the alleged incident, for prior sexual battery convictions. He reiterated that he and Counsel never spoke of the lifetime community supervision requirement prior to the day of the plea hearing. The Petitioner could not remember when the trial court informed him of the requirement and stated that he did not discuss it with Counsel at all during the hearing. He agreed that his "problem" was that he did not know the rules of lifetime community supervision. The Petitioner stated that he told the trial court he wanted to enter a plea because he felt he had no other choice, particularly because no witnesses were present in his defense.

The Petitioner stated that his fiancée, Ms. Pickard, would have testified that she was in bed with him during the time the alleged sexual encounter occurred with the victim and that his daughter and the victim were in another bedroom. Counsel told the Petitioner that Ms. Pickard was not a "reliable witness" because her "first story" was that she worked the night shift and was not at the residence during the alleged incident. The Petitioner stated that Counsel never heard his "side" of the story. He further maintained that Ms. Pickard would have testified that she was in the bedroom with the Petitioner "all night long."

On redirect-examination, the Petitioner stated that the lifetime community supervision requirement was not listed on the State's plea offer document that he signed. He stated that he did not have time to fully consider his plea as it related to the lifetime community supervision requirement.

Counsel testified that he represented the Petitioner in four criminal cases and that he met with him a "number of times," including several times about the present case for a total of approximately six to ten meetings. Counsel agreed that he did not discuss the lifetime community supervision requirement with the Petitioner prior to the plea hearing. The day of trial when Counsel arrived at the courthouse, the Petitioner's fiancée, Ms. Pickard, informed him that the Petitioner was not satisfied with Counsel's services and wanted a different attorney. Because it was the morning of trial, Counsel explained that only the trial court could order a new attorney to represent the Petitioner. A jury was selected for the trial, and then the trial court questioned the Petitioner about his issues with Counsel. The Petitioner voiced his concerns, and the trial court stated that it did not find that the Petitioner had raised any issue warranting postponement of the trial or appointing a new attorney. Counsel requested an opportunity to meet privately with the Petitioner in light of the trial court's ruling, and Counsel met with the Petitioner and a few family members. Counsel reviewed the State's offer with the Petitioner again, and the Petitioner agreed to accept the State's ten-year offer to settle all of his outstanding

4

Gibson County cases.

Counsel agreed that he had documented in his case notes that the Petitioner was "visibly upset" that Counsel would not permit Ms. Pickard to testify. He wrote that:

> my reason for refusing to use her [as a witness] was two-fold. First, Ms. Pickard had been interviewed by . . . our [defense] investigator, and had told him that she was working the night shift at McDonald's the night the crime allegedly occurred and did not get home until around 3:30 a.m. The crime allegedly occurred very close to 1 a.m. which meant that Ms. Pickard had no firsthand knowledge of what did or did not occur; however, she kept changing her story and now said she would testify that she was in bed with [the Petitioner] at 1 a.m. that night. I could not ethically permit her to testify to something I believed to be perjury.

Counsel testified that he interviewed Ms. Pickard several times. Counsel agreed that the victim gave a statement during the investigation that Ms. Pickard was present the night of the incident and asleep in bed when the crime occurred.

Counsel testified that another reason he did not want Ms. Pickard to testify was because of her testimony in the Petitioner's previous trial, a bench trial, where the trial court had found her testimony not credible and made a finding that she would "say anything she needed to for [the Petitioner]." Counsel agreed that his not allowing Ms. Pickard to testify had "a lot" to do with the Petitioner's decision to enter a plea.

Counsel testified that it was an omission on his part not to inform the Petitioner of the lifetime community supervision requirement prior to the trial date. Counsel stated that he understood the requirements of that level of supervision and spoke with the Petitioner privately during the hearing before the Petitioner entered his plea. Counsel told the Petitioner that the supervision would be "an intensive probation" where he may be required to wear a GPS monitoring device and have to follow the rules set forth by his probation officer. Counsel estimated that he spoke with the Petitioner for approximately ten minutes about this and then asked the Petitioner if he had any questions, to which the Petitioner replied, "No." He asked the Petitioner, "[I]s this a deal breaker for you," meaning the lifetime community supervision requirement, and the Petitioner replied, "No." Counsel agreed that the brevity of his review with the Petitioner was not an "ideal" amount of time for the Petitioner to consider the lifetime community supervision requirement and that Counsel should have discussed it with him before the day of trial. He, however, believed he informed the Petitioner of "everything that was pertinent to making that decision." A transcript of the plea hearing was entered into the record as an exhibit.

5

On cross-examination, Counsel testified that he was concerned about Ms. Pickard's credibility, but he was also concerned about the State's evidence against the Petitioner. Specifically, he was concerned with the State's witnesses, one of whom was the Petitioner's daughter. He believed the Petitioner's daughter's testimony would be "devastating" and, prior to trial, he unsuccessfully attempted to exclude her testimony. He agreed that the plea agreement of ten years provided for substantially less exposure than the potential thirty-seven years the Petitioner faced if convicted at trial.

The Petitioner's fiancée, Ashley Pickard, testified that she had been in a relationship with the Petitioner for six-and-a-half years and had worked at McDonald's for thirteen years. She was living with the Petitioner and his daughter when this incident occurred. Ms. Pickard recalled that on the day of the alleged incident she went to work at 3:30 p.m. and left work "around 12:42" a.m. The Petitioner, his daughter, and the victim picked her up from work and went home. She stated that she was able to observe the Petitioner for the rest of the night, and he was not alone with the victim and his daughter. Ms. Pickard testified that she was present in the courtroom on the trial date and would have testified to these events had she been called as a witness.

On cross-examination, Ms. Pickard agreed that she had testified in the Petitioner's previous bench trial. She agreed that the Petitioner was on the Sex Offender Registry while she was in a relationship with him, and she was aware that he had not been in compliance.

After hearing the evidence, the post-conviction court found Counsel's performance was "well within the standard of reasonableness." The post-conviction court found that Counsel fully investigated the case as evidenced by both his testimony at the hearing and the numerous pre-trial motions filed. As to Counsel's decision to not call Ms. Pickard to testify at trial, the post-conviction court found the decision "strategically a good decision" in light of Ms. Pickard's testimony at the hearing. Finally, the post-conviction court found that the Petitioner knew that his plea included the supervision for life requirement. The trial court concluded by finding that the Petitioner had not proven his allegations. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition. He asserts that he was not adequately advised of the consequence of community supervision for life and that Counsel was ineffective for refusing to call a vital witness, Ms. Pickard. The State responds that the Petitioner received the effective assistance of counsel at trial. We agree with the State.

The State correctly notes that the Petitioner has changed his position with regard to his claim that he was not adequately advised of community supervision for life. Initially, the Petitioner asserted that Counsel was ineffective for his failure to adequately advise him, which was the issue the post-conviction court addressed at the hearing. On appeal, the Petitioner asserts that the trial court erred when it failed to adequately advise him of community supervision for life resulting in an involuntary plea. The Petitioner, however, "may not change theories between the lower court and the appellate court." *State v. Alder*, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001). Thus, we review this issue as raised in his petition and litigated at the post-conviction hearing.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. §40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*,

the Petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In the present case, the post-conviction court found that the Petitioner was adequately advised regarding lifetime supervision. Our review of the record shows that, on the day of trial, the Petitioner elected to enter a plea agreement. Counsel had not discussed all the requirements of the plea agreement at that time. During the plea submission hearing, the State raised the issue of lifetime supervision and both the trial court and Counsel discussed this requirement with the Petitioner. With the knowledge of this requirement, the Petitioner proceeded with the remainder of the submission hearing and submitted a best interest plea to the charges. We conclude that the post-conviction court's finding that Counsel was not ineffective was supported by the evidence.

Next, the Petitioner contends that trial counsel was ineffective for refusing to call Ms. Pickard to testify. After hearing both Ms. Pickard and Counsel testify, the post-conviction found that Counsel's decision to exclude Ms. Pickard was "strategically a good decision." It is clear from the record that the decision to not call Ms. Pickard was one made after adequate preparation and careful consideration. Ms. Pickard told a defense investigator that she was not present the night of the incident, although she later changed her account of the night in question. Counsel personally spoke with Ms. Pickard on several occasions and found that her story had changed. In so doing, under the Tennessee Rules of Professional Conduct, he believed that he was prohibited from calling Ms. Pickard to testify. Tenn. Sup. Ct. R. 8, RPC 3.3(b) (providing that "[a] lawyer shall not offer evidence the lawyer knows to be false"); *see also*, Tenn. Sup. Ct. R. 8, RPC 3.3(d) (providing that a lawyer may refuse to offer evidence, other than a defendant's own testimony, that "the lawyer reasonably believes is false . . . .") Counsel's concern regarding Ms. Pickard's credibility was based on her inconsistent statements, as well as his prior experience with Ms. Pickard as an unreliable witness.

Thus, we conclude that the Petitioner failed to show that Counsel's services fell outside the range of competence normally required of attorneys in criminal trials. *See Baxter*, 523 S.W.2d at 936. Having failed to prove the first prong of the *Strickland* standard, the Petitioner has not met his burden of showing that he is entitled to post-conviction relief based upon Counsel's performance. *Id.*

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly denied the Petitioner's petition for post-conviction relief.

In accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE